■ In the Matter of RIVERKEEPER, INC., et al., Respondents, v ERIN CROTTY, as Commissioner of Environmental Conservation, et al., Appellants. [814 NYS2d 322]—

Mercure, J.P. Appeal from a judgment of the Supreme Court (Kavanagh, J.), entered September 3, 2004 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, inter alia, denied respondents' motion to dismiss the petition.

Respondent Dynergy Northeast Generation, Inc. owns and operates the Danskammer power plant, which is located on the Hudson River near the City of Newburgh, Orange County. Danskammer houses four steam turbine generator units that produce electricity. To cool the steam condensers, the plant uses a process called "once-through cooling," which consists of drawing water out of the Hudson River, passing it through the steam condensers and then discharging the heated water back into the river. This type of thermal discharge—which deleteriously impacts fish populations—falls within the definition of water pollution regulated by the Clean Water Act (*see* 33 USC § 1326 [b]; § 1362 [6]). New York, mirroring federal regulations, requires power plants that employ water intake and thermal discharge systems, such as Danskammer, to obtain a permit from respondent Department of Environmental Conservation (hereinafter DEC) under the State Pollutant Discharge Elimination System (*see* ECL 17-0701, 17-0801—17-0831). Generally, such permits are valid for a fixed term not to exceed five years (*see* ECL 17-0817 [1]; 6 NYCRR 750-1.15), and DEC is required to review all existing permits at least once every five years for conformance with new federal treatment technology and state water quality standards (*see* ECL 17-0817 [3]).

As relevant here, DEC last issued a permit for Danskammer in 1987, with an expiration date of November 1, 1992. In May 1992, the prior owner and operator of Danskammer, Central Hudson Gas and Electric (hereinafter CHG&E), filed an application for the renewal of that permit. On May 20, 1992, DEC

requested that CHG&E consent to a temporary extension of the 15-day timetable for it to determine whether the application was complete (*see* ECL 70-0109 [1] [a], [b]; [6]), citing "staff limitations and other commitments." DEC asserts that it suspended its review of the Danskammer permit in anticipation of receiving a draft environmental impact statement—that was never provided—from other neighboring power plants addressing issues relevant to the Danskammer permit renewal. In any event, DEC took no action on the application for permit renewal and Danskammer has continued to operate under its 1987 permit.

In February 2001, petitioner Riverkeeper, Inc., a public interest environmental organization, complained to DEC about the delay in the processing of the 1992 renewal application for the Danskammer permit, and demanded that DEC issue a notice that the application was complete and hold a prompt adjudicatory public hearing on the application. Ultimately, in October 2002, respondent Commissioner of Environmental Conservation denied the request for an adjudicatory hearing, finding that petitioner lacked standing to compel DEC to determine when a permit application is complete. The Commissioner further found that the permit was properly extended pursuant to State Administrative Procedure Act § 401 (2), which provides that when a licensee makes a "timely and sufficient application" for renewal, "the existing license does not expire until the application has been finally determined by the agency." The Commissioner did, however, order DEC staff to conduct the required five-year review of the permit pursuant to ECL 17-0817 (3).

Petitioners then commenced this combined CPLR article 78 proceeding and action for declaratory judgment challenging the Commissioner's ruling. Petitioners sought (1) mandamus to compel DEC to perform the five-year review of the Danskammer permit, issue a notice of complete application and hold an adjudicatory hearing, (2) a declaration that the 1987 Danskammer operating permit was not extended by State Administrative Procedure Act § 401, and (3) a declaration that DEC's 10 years of inaction on CHG&E's 1992 application for renewal of the Danskammer permit constituted a "constructive renewal" of the permit in violation of the substantive and procedural requirements of the Environmental Conservation Law. Respondents moved to dismiss the petition on numerous grounds. Supreme Court found that petitioners' first cause of action for mandamus to compel was largely moot because, by that time, DEC had performed the five-year review, issued a draft permit, held a public hearing and accepted public comment on the draft

permit. The court granted petitioners' second and third causes of action, however, declaring that any extension of the permit under the State Administrative Procedure Act was void due to the unreasonable length of time that had passed and finding that DEC's lack of action on the permit application was arbitrary and capricious. Noting that its holding would force the closure of the Danskammer plant, Supreme Court, by its own motion, stayed enforcement of its judgment. Respondents now appeal, arguing, among other things, that this combined proceeding and declaratory judgment action is untimely.[1] We agree.

Petitioners assert that their second and third causes of action accrued in 1997 and are subject to the six-year statute of limitations typically applicable to declaratory judgment actions (*see* CPLR 213 [1]). Alternatively, they argue that if the four-month limitations period that governs CPLR article 78 proceedings (*see* CPLR 217 [1])—the common vehicle for challenging governmental action—applies here, the statute of limitations was not triggered until October 2002 when the Commissioner determined that the permit was properly extended pursuant to State Administrative Procedure Act § 401 (2). In determining the applicable limitations period for a declaratory judgment action, courts must " 'examine the substance of that action to identify the relationship out of which the claim arises and the relief sought' . . . . [I]f the claim could have been made in a form other than an action for a declaratory judgment and the limitations period for an action in that form has already expired, the time for asserting the claim cannot be extended through the simple expedient of denominating the action one for declaratory relief" (*New York City Health & Hosps. Corp. v McBarnette,* 84 NY2d 194, 201 [1994], quoting *Solnick v Whalen,* 49 NY2d 224, 229 [1980] [citations omitted]; *see Trager v Town of Clifton Park,* 303 AD2d 875, 876 [2003]).

In their second cause of action, petitioners contend that DEC's initial extension of the 1987 Danskammer permit was invalid because State Administrative Procedure Act § 401 (2) predicates extensions on the submission of a "timely and sufficient application for . . . renewal" and, petitioners assert, CHG&E's 1992 application for renewal of the permit was not sufficient. In the alternative, petitioners argue that even assuming that DEC's initial extension of the permit was valid, any

---

1. As Supreme Court explained, petitioners have received the relief requested in their first cause of action and, thus, that claim for mandamus to compel is now moot. Accordingly, petitioners' first cause of action must be dismissed.

such extension under the State Administrative Procedure Act was limited to one five-year term pursuant to ECL 17-0817 (1), which, as noted above, provides that such "permits shall be valid for a fixed term not to exceed five years." Thus, pursuant to petitioners' interpretation of the relevant statutory provisions, the State Administrative Procedure Act extension of the permit would have expired on May 20, 1997—five years after DEC requested that CHG&E consent to waiver of the time limits for action on the CHG&E 1992 application for renewal of the 1987 Danskammer permit. Petitioners concede that resolution of the issue of whether CHG&E's application was sufficient is not necessary on this appeal in light of their argument in the alternative that any extension of the permit would have expired in 1997. In their third cause of action, petitioners assert that DEC's failure to act on the 1992 renewal application should be deemed a "constructive renewal" of the 1987 permit, and assert that this renewal for an indefinite period of time also violates the five-year limit in ECL 17-0817 (1).

In short, on both causes of action, petitioners argue that DEC's interpretation of the State Administrative Procedure Act as permitting it to rely on CHG&E's 1992 application for renewal to extend the Danskammer permit for more than five years was arbitrary, capricious and affected by an error of law. Such claims are cognizable in a CPLR article 78 proceeding (*see* CPLR 7803 [3]) and accrued, thereby triggering the four-month limitations period, when the challenged administrative action became final and binding upon petitioners. As explained below, that occurred no later than 1997.

"[A]gency action is 'final and binding upon the petitioner' " when the agency has "reached a definitive position on the issue that inflicts actual, concrete injury . . . [that] may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.,* 5 NY3d 30, 34 [2005]; *see Matter of Essex County v Zagata,* 91 NY2d 447, 453-454 [1998]). That a particular agency action is merely a step in the agency's decision-making process does not render that action nonfinal for purposes of review under CPLR article 78. In other words, "[e]ven when ultimate resolution of a matter is still pending, a determination within the context of that matter may be 'final' if the governmental entity acts beyond its statutory authority and causes injury" (*Matter of Demers v New York State Dept. of Envtl. Conservation,* 3 AD3d 744, 746 [2004]; *see Matter of Gordon v Rush,* 100 NY2d 236, 242-243 [2003]).

Here, petitioners' claims challenging DEC's actions in extending the Danskammer permit for more than five years accrued in 1997, when petitioners assert that the five-year review under ECL 17-0817 was due. Petitioners were impacted at that time by DEC's decision to delay its review of the 1992 application for renewal beyond five years, the alleged time limit for any valid extension of the underlying permit pursuant to State Administrative Procedure Act § 401 (2). It was at that point—at the latest—that DEC, by virtue of its failure to act on the 1992 renewal application prior to the alleged expiration of the State Administrative Procedure Act extension, reached a definitive position that caused petitioners "actual, concrete injury and no further agency proceedings [could] alleviate or avoid the injury" (*Matter of Essex County v Zagata, supra* at 454; *see Matter of Gordon v Rush, supra* at 243; *cf. Matter of Demers v New York State Dept. of Envtl. Conservation, supra* at 746).[2]

We are not persuaded by petitioners' argument that the four-month limitations period could be triggered only by an official announcement from DEC that the extension of the Danskammer permit was going to span beyond the five-year term—which indisputably ended in May 1997. In so arguing, petitioners effectively seek to extend the statute of limitations indefinitely despite their awareness that the five-year term had run in 1997. Indeed, DEC's de facto determination that a State Administrative Procedure Act § 401 (2) extension may last beyond five years was readily ascertainable at that time. Although petitioners assert that nothing in DEC's 1992 request for a temporary extension on CHG&E's permit application could have alerted them to the fact that the extension would last for over 10 years, petitioners were certainly aware by 1997 that the extension had lasted more than the claimed permissible period. We cannot agree with the implicit premise underlying petitioners' argument that there was simply no determination to challenge until 2002—i.e., that DEC was required to provide notice to petitioners regarding its decision to extend Danskammer's permit for

---

**2.** Our determination that petitioners' claims are untimely is limited to the second and third causes of action, which turn on petitioners' argument that any valid State Administrative Procedure Act extension was limited to one five-year term that expired in 1997. Once DEC allowed the extension to continue beyond that date, the time limit for which petitioners argue had passed and petitioners were irreversibly injured insofar as they seek to enforce that time limit. In contrast, further administrative action could have ameliorated the injury asserted in petitioners' first cause of action seeking to compel DEC to perform the five-year review of the Danskammer permit, issue a notice of complete application and hold an adjudicatory hearing. As noted above, such administrative action on behalf of DEC has ameliorated petitioners' injury in that regard and now rendered that cause of action moot.

more than five years as part of the application process (*see* ECL 70-0109; 6 NYCRR 621.15; *see also Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y.*, 76 NY2d 779 [1990], *revg on dissenting op of Levine, J.*, 150 AD2d 45, 51-54 [1989]). Rather, DEC's extension of the permit beyond the five-year period constituted a definitive position on the issue that was readily ascertainable by petitioners in 1997 and, at that point, could not have been ameliorated by further administrative action. Accordingly, petitioners' second and third causes of action accrued at that time and, thus, are barred by the applicable four-month statute of limitations and must be dismissed.

In light of our decision, the parties' remaining arguments, including respondents' assertions that petitioners lack standing and failed to exhaust administrative remedies, are academic.

Spain, Mugglin and Rose, JJ., concur.

Peters, J. (dissenting). Even accepting the majority's determination that the applicable statute of limitations period for both the second and third causes of action is four months (*see* CPLR 7803 [3]), I would still find this action timely.

The decision of respondent Department of Environmental Conservation (hereinafter DEC) to delay its review of the 1992 renewal application of the Danskammer power plant was articulated in its letter, dated May 20, 1992, to Central Hudson Gas and Electric. It is beyond refute that petitioners were not intended recipients of that letter, that they did not otherwise receive that letter and that, even if they were entitled to the information contained therein, nothing could possibly have put them on notice that the "temporary extension" was going to last for this extended period. In fact, the only time that DEC actually made a "determination" that the extension for the Danskammer permit was going to span beyond the five-year term was in October 1, 2002 when respondent Commissioner of Environmental Conservation reviewed petitioners' challenge to DEC's determination that petitioners lacked standing to compel DEC to review the Danskammer permit and that the permit was properly extended pursuant to State Administrative Procedure Act § 401 (2); that determination became the subject of this proceeding.

For the purpose of a CPLR article 78 proceeding, an agency action will be deemed final and binding when a definitive position, inflicting a concrete injury, has occurred (*see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]). I conclude that since this proceeding was commenced on November 19, 2002, less than two months after the Commissioner's determination, it was timely.

Ordered that the judgment is reversed, on the law, without costs, respondents' motion granted and petition dismissed.