Appeal from a judgment (denominated order) of the Supreme Court, Erie County (John L. Michalski, A.J.), entered April 13, 2015 in a proceeding pursuant to CPLR article 78. The judgment granted the pre-answer cross motion of respondents to dismiss the petition and dismissed as moot the motion of petitioners for leave to amend the petition.
It is hereby ordered that the judgment so appealed from is reversed on the law without costs, the cross motion is denied, the petition is reinstated, respondents are granted 20 days from service of the order of this Court with notice of entry to serve and file an answer, and the matter is remitted to Supreme Court, Erie County, for a determination of the motion for leave to amend the petition.
Memorandum: Petitioners, who are retired employees of respondent West Seneca Central School District (District) and under the age of 65 years old, commenced this CPLR article 78 proceeding seeking to annul respondents’ determination to discontinue the practice of offering “Under Age 65 retirees” the option of carrying their health insurance through the District’s active employee Blue Cross/Blue Shield plan. During their employment with the District, petitioners were covered under a collective bargaining agreement between the District and the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO (CSEA), which allowed petitioners to enroll in the same Blue Cross/Blue Shield health insurance and Guardian dental insurance plans available to the District’s current employees, at their own expense. On June 5, 2014, the District *1615 mailed to “Retirees Under age 65 carrying BlueCross BlueShield Health Insurance” an undated letter stating “that effective July 1, 2014, West Seneca Central School District will no longer offer Under Age 65 retirees the option of carrying their health insurance through the active employee Blue Cross Blue Shield plan.” On June 18, 2014, following a meeting with affected retirees, the District issued to “retirees under age 65 Carrying BlueCross BlueShield Health Insurance” a letter stating that “the District has decided to extend your ability to participate in the CSEA Health Insurance Plan until August 1, 2014.” On July 31, 2014, the District cancelled insurance coverage for retirees under age 65. According to petitioners, the District’s actions violated the “Retiree Health Insurance Moratorium Law” (L 2009, ch 504, § 1, part B, § 14).
Petitioners moved for leave to amend the petition and, in lieu of filing an answer, respondents cross-moved to dismiss the petition on the ground that it was barred by the four-month statute of limitations (see CPLR 217 [1]). Supreme Court granted the cross motion and dismissed the petition, further concluding that petitioners’ motion to amend was moot. We reverse.
Initially, we and our dissenting colleagues agree that the “determination to be reviewed” in this proceeding is the decision embodied in the undated letter sent on June 5, 2014 (CPLR 217 [1]). We note that respondents correctly concede that they bear the burden of establishing in the first instance that the proceeding was not timely commenced within the applicable four-month statute of limitations (see id.; Matter of Bill’s Towing Serv., Inc. v County of Nassau, 83 AD3d 698, 699 [2011]).
Respondents contend that the date of mailing, rather than the date of receipt by petitioners, of the undated letter to petitioners notifying them of the discontinuance of their participation in the District’s health insurance plan, was the event which began the running of the statute of limitations. In order to apply the date of mailing to the analysis, which involves a constructive notice test, it is necessary to make the legal conclusion, as a threshold matter, that the determination at issue was “quasi-legislative” in nature (see Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y., 76 NY2d 779, 780 [1990], revg on dissenting op of Levine, J., 150 AD2d 45, 51-54 [1989]). Respondents contend that the undated letter is properly characterized as a “quasi-legislative” decision, that actual notice is not required, and that constructive notice by mailing was sufficient to commence the four- *1616 month limitations period. We recognize that at oral argument of this appeal petitioners’ counsel joined in the legal conclusion that the determination was “quasi-legislative.” However, this Court is not bound by an erroneous concession of counsel or the parties with respect to a legal principle and such “concession does not . . . relieve us from the performance of our judicial function and does not require us to adopt the proposal urged upon us” (People v Berrios, 28 NY2d 361, 366-367 [1971]). “When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law” (Kamen v Kemper Financial Services, Inc., 500 US 90, 99 [1991]). We simply cannot turn a blind eye to the unsubstantiated and patently erroneous legal conclusion offered by the parties on this record (see generally Arcadia v Ohio Power Co., 498 US 73, 77 [1990], reh denied 498 US 1075 [1991]). We have no quarrel with a litigant conceding an issue of fact (see Elston v Canty, 15 AD3d 990, 990 [2005]), or conceding that a bill of particulars is sufficiently specific (see Griswold v Kurtz, 80 AD2d 983, 983 [1981]), or waiving a beneficial right (see Mitchell v New York Hosp., 61 NY2d 208, 214 [1984]). Those types of concessions do not intrude upon the judicial function of correctly identifying and applying the law to the facts.
A quasi-legislative-type administrative determination is one having an impact far beyond the immediate parties at the administrative stage (see Owners Comm. on Elec. Rates, 150 AD2d at 53 [Levine, J.]; Matter of Plainview-Old Bethpage Congress of Teachers v New York State Health Ins. Plan, 140 AD3d 1329, 1331 [2016]). Thus, where a quasi-legislative determination is challenged, “actual notice of the challenged determination is not required in order to start the statute of limitations clock” (Matter of School Adm’rs Assn. of N.Y. State v New York State Dept. of Civ. Serv., 124 AD3d 1174, 1176 [2015], lv denied 26 NY3d 904 [2015]). The policy underlying the rule is that actual notice to the general public is not practicable (see Owners Comm. on Elec. Rates, 150 AD2d at 53). Instead, the statute of limitations begins to run once the administrative agency’s quasi-legislative determination of the issue becomes “readily ascertainable” to the complaining party (Matter of Riverkeeper, Inc. v Crotty, 28 AD3d 957, 962 [2006]).
On the other hand, where the public at large is not impacted by a determination, actual notice, commonly in the form of receipt of a letter or other writing containing the final and binding determination, is required to commence the statute of *1617 limitations (see Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998]; New York State Assn. of Counties v Axelrod, 78 NY2d 158, 165-166 [1991]).
Here, the only evidence submitted by respondents with respect to the determination to discontinue the practice of permitting “Under Age 65 retirees” the option of carrying their health insurance through the District’s Blue Cross/Blue Shield plan was the undated letter that was signed by the “Assistant Superintendent, Human Resources.” That letter makes no mention of any meeting of, or resolution by, respondent West Seneca Central School District Board of Education (Board of Education) at which the participation of “Under Age 65 retirees” in the health insurance plan was discussed or voted upon. The Assistant Superintendent does not mention the authority, if any, upon which he issued the letter. The undated letter does not identify when the determination was made or by whom it was made. The letter does not indicate that it was the Assistant Superintendent’s decision to make or that he was acting at the direction of the Board of Education or respondent Dr. Mark J. Crawford, Superintendent of Schools (Superintendent).
In other words, respondents wholly failed to submit any evidence establishing the process that resulted in the issuance of the undated letter, and the record is otherwise devoid of any evidence of the nature of the process giving rise to the determination. In our view, all of those facts and factual shortcomings are critical to the analysis. Moreover, respondents do not explain how dropping the letter in the mailbox made the determination “readily ascertainable” to anyone — and more particularly to the individual petitioners/retirees.
The determination clearly had no impact upon the public at large, and respondents have wholly failed to establish that actual notice to the affected persons would be impracticable or unduly burdensome. Indeed, in their moving papers, respondents failed to quantify the number of affected “Under Age 65 retirees.” Even assuming, arguendo, that a District resident or taxpayer sought to challenge the determination, we note that respondents fail to explain how the undated letter, privately addressed and mailed only to “Under Age 65 retirees,” would be “readily ascertainable” to a resident or taxpayer in the District so as to commence the running of the statute of limitations with respect to such a challenge. Nor do respondents explain how an “Under Age 65 retiree” would be expected to know that he or she was aggrieved by the undated letter when nothing further in the way of notice was given by respondents other than dropping the letter in a mailbox (cf. School Adm’rs Assn. of N.Y. State, 124 AD3d at 1177-1178).
*1618 We thus conclude that respondents failed to meet their burden of establishing that the challenged determination was “quasi-legislative” and, therefore, that the “readily ascertainable” constructive notice test should be applied herein (Riverkeeper, Inc., 28 AD3d at 962; see School Adm’rs Assn. of N.Y. State, 124 AD3d at 1176-1177).
We further conclude that our decision in Matter of Jones v Board of Educ. of Watertown City School Dist. ([appeal No. 2] 30 AD3d 967 [2006]), is inapplicable to the facts presented here. In Jones, the Board of Education passed a resolution that required retirees to contribute to their health insurance premiums. The impacted retirees were informed of the resolution in a letter from the Superintendent of the subject school district that was mailed to and received by the petitioners. Jones concluded that the mailing of the letter — not receipt— was the triggering event for commencing the limitations period (id. at 968-969). Nonetheless, Jones did not address the issue whether the determination was “quasi-legislative.” Nor did it resolve the question of why the subject school board’s resolution was not the triggering event in that case. Even assuming, arguendo, that the Jones Court considered the determination to be of a “quasi-legislative” nature, in our view it may very well have been that the Jones Court concluded that a school board’s public meeting, published resolution, and mailing — in combination — made the determination “readily ascertainable” (see School Adm’rs Assn. of N.Y. State, 124 AD3d at 1176-1177). However, inasmuch as Jones neither explicitly addressed nor resolved those issues, we conclude that it has no precedential value toward the resolution of this appeal on the facts before us.
Lastly, inasmuch as respondents, in our view, failed to meet their burden to establish when the four-month statute of limitations commenced, the burden did not shift to petitioners to establish any particular date of individual receipt of the undated letter. In any event, respondents failed to establish any dates of receipt by petitioners in their moving papers.
Finally, we further conclude that “[t]he grant of an extension of time to comply with the final determination was merely incidental to that determination and did not affect” the time at which the statute of limitations began to run (Matter of S.S. Canadiana Preserv. Socy. v Boardman, 262 AD2d 961, 962 [1999] [internal quotation marks omitted]; see Matter of Metropolitan Package Store Assn. v Duffy, 143 AD2d 832, 833 [1988], lv denied 73 NY2d 705 [1989]).
Carni and DeJoseph, JJ., concur.
*1619 Peradotto, J.P., concurs in the following memorandum.